# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| TERRANCE PEVIE, *Inmate Identification Number 404-424*,<br><br>Plaintiff,<br><br>v.<br><br>KEITH LYONS, *Warden, JCI*,<br>SCOTT D. SNYDER, *Maintenance Manager*,<br>ALLEN GANG, *Chief of Security*,<br>*individually and in their official capacities*,[1]<br><br>Defendants. | Civil Action No. TDC-17-1796 |

## MEMORANDUM OPINION

Terrance Pevie, an inmate now confined at Eastern Correctional Institution ("ECI") in Westover, Maryland, has filed a civil action against Jessup Correctional Institution ("JCI") personnel Warden Keith Lyons ("the Warden"); Scott D. Snyder, Maintenance Manager; and Allen Gang, Chief of Security, for allegedly failing to repair exposed electrical wires that caused serious injury to Pevie while he was incarcerated at JCI. Pevie claims that Defendants thus violated his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution and seeks declaratory relief and monetary damages against each Defendant in his individual and official capacity. Defendants Snyder and Gang have yet to be properly served.

Presently pending before the Court is the Warden's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. In response, Pevie filed a Motion to Dismiss or, in

---

[1] The Clerk shall amend the docket to include additional Defendants Scott D. Snyder and Allen Gang, to reflect the proper spelling of Defendant Lyons' name, and to reflect that all Defendants are sued in their individual and official capacities.

the Alternative, Motion for Summary Judgment, which the Court construes as a memorandum in opposition to the Warden's Motion. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Warden's Motion is GRANTED, and the claims against the unserved Defendants, Snyder and Gang, are DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

On the morning of November 14, 2015, Pevie was participating in recreation in a dayroom in the B-Building of JCI when he backed into an uncovered electrical outlet with exposed wires and was electrocuted. An officer found Pevie on the floor in an unresponsive state. Pevie was taken to the prison infirmary by stretcher, received medical treatment for leg blisters and minor burns caused by the electrical shock, and was observed for several hours prior to discharge back to his cell. In an administrative remedy procedure grievance ("ARP"), Pevie claimed additional injuries, including second-degree burns to his lower left leg and injuries to his head and neck caused by falling while unconscious. Medical records do not corroborate that he suffered these additional injuries.

According to Pevie, in the months prior to Pevie's injury, fellow inmate Eric W. Fuller had noticed the exposed wiring and brought the issue to "several officers' attention," but they failed to report this "fire/safety hazard to maintenance to be fixed." Compl. 3, ECF No. 1. Fuller provided an unsworn statement that was attached to Pevie's ARP that confirmed that he had reported the exposed wiring to several officers.

Pevie's ARP was denied at the institutional and commissioner level before it was reviewed by the Inmate Grievance Office ("IGO"). On January 3, 2017, Administrative Law Judge Michelle W. Cole ("ALJ") concluded that the Division of Correction ("DOC") "was negligent when it failed

to repair the exposed electrical outlet in the recreation room" and awarded Pevie $1,100 in compensation for his pain and suffering. ALJ Op. at 9-10, ECF No. 1-3. The ALJ's proposed findings and award were affirmed by Stephen T. Moyer, Secretary of the Department of Public Safety and Correctional Services, on February 2, 2017.

In the present Complaint, Pevie asserts that the "unsafe conditions" and "negligence of staff and maintenance" arising from the failure to repair the exposed wiring constituted cruel and unusual punishment, in violation of the Eighth Amendment, and a violation of his right to due process of law under the Fourteenth Amendment. In the Complaint, Pevie makes no specific allegations against the Warden, Snyder, or Gang. In his Opposition, however, Pevie more specifically alleges that Defendants "had actual knowledge of the dangerous conditions" and "the knowledge was gained in sufficient time to give the defendants a[n] opportunity to remove or warn" him of the dangerous condition. Opp'n at 1, ECF No. 25. He further asserts that a "supervisor may also be sued for ignoring or failing to react to a widespread health or safety problem." *Id.* He also claims for the first time that "[e]very Wednesday both defendants (Lyon and Gang) plus their whole administration team visit the segregation building along with mental health doctors to see if any inmates have problems or concerns while on lock up" and that "2 or 3 weeks prior to me getting hurt defendants (Lyon and Gang) stood in front of the broken outlet socket along with the rest of his administration team. Lyon could be heard asking officers who were with him 'why wasn't the socket fixed and to fix it immediately.'" Mem. Opp'n at 3, ECF No. 25-2.

In a declaration submitted with the Motion, the Warden asserts that he expects JCI staff to comply with directives and policies relating to inmate housing and facility conditions. He further

states that when responding to an ARP, he relies on the review and investigation by JCI staff in determining whether to approve a proposed response to the ARP.

## DISCUSSION

In his Motion, the Warden seeks dismissal of the Complaint or summary judgment in his favor on several grounds, including that: (1) the Warden is not personally liable for Pevie's alleged injuries; (2) Pevie fails to state an Eighth Amendment or due process claim; and (3) the Warden is entitled to qualified immunity.

### I. Legal Standards

The Warden has filed his Motion as a Motion to Dismiss, or, in the Alternative, for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the Complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature. *See Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, Pevie has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter and has instead submitted an Opposition to the Motion in which he seeks summary judgment on his own behalf. Under these circumstances, the Court will construe the Warden's Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in

the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Eleventh Amendment Immunity

As a preliminary matter, the Court will dismiss the damages claim against the Warden in his official capacity. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. Amend XI. In effect, the Eleventh Amendment bars suits against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Moreover, a suit against a state official in that person's official capacity is the equivalent of a suit against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

Here, Defendants are State employees. *See* Md. Code Ann., State Gov't § 12-101(a) (2015) (defining "state personnel"). To the extent, therefore, that Pevie is seeking damages against the Warden in his official capacity, he has asserted a claim against the State of Maryland. Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Will*, 491 U.S. at 66; *Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 611 & n.16 (D. Md. 2016). Furthermore, Maryland

has not waived its sovereign immunity for claims brought in federal court. Md. Code Ann., State Gov't § 12-104(a); *Dyer,* 187 F. Supp. 3d at 611. Thus, Pevie's damages claim against the Warden in his official capacity is barred by the Eleventh Amendment. *See Pennhurst,* 465 U.S. at 100-01.

### III. Eighth Amendment

Because Pevie is an inmate complaining of an injury occurring in a prison, his § 1983 claim arises under the Eighth Amendment to the United States Constitution. "The Eighth Amendment's prohibition on 'cruel and unusual punishments' imposes certain basic duties on prison officials." *Raynor v. Pugh,* 817 F.3d 123, 127 (4th Cir. 2016). Those duties "include maintaining humane conditions of confinement, including . . . reasonable measures to guarantee the safety of the inmates." *Id.* Pevie's Eighth Amendment claim is most fairly construed as a claim that Defendants imposed cruel and unusual punishment upon him by failing to protect him from a known safety risk, specifically the live electrical wiring. To establish an Eighth Amendment claim based on a failure to protect, a plaintiff must satisfy a two-part inquiry that includes both an objective and a subjective component. *See id.* Pevie must show objectively "a serious deprivation" of rights "in the form of a serious or significant physical or emotional injury." *Danser v. Stansberry,* 772 F.3d 340, 346-47 (4th Cir. 2014). In determining whether this objective component has been satisfied, the Court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney,* 509 U.S. 25, 36 (1993).

Pevie must also establish subjectively that the prison officials involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A prison official must have actual knowledge of an excessive risk to the prisoner's safety but nevertheless disregard it. *Id.* at 837. Such knowledge

can be established by a showing that the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and that the official actually drew that inference. *Id.* at 837. A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128.

To constitute deliberate indifference, a defendant's action or action must constitute more than ordinary lack of care for Pevie's safety. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere negligence does not transform the conduct of prison personnel into a constitutional claim under 42 U.S.C. § 1983 solely because the action was committed under color of state law. *See Atkins v. Sheriff's Jail Avoyelles Parish*, 278 F. App'x 438, 439 (2008); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Here, although there is no dispute that the live electrical wiring constituted a serious risk to inmate health and safety, Pevie fails to provide sufficient facts to establish deliberate indifference by the Warden. First, in a § 1983 claim, a defendant cannot be found liable under a theory of vicarious liability or *respondeat superior*. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Thus, Lyons's status as the Warden of JCI and the overall supervisor of all JCI personnel does not subject him to liability.

Second, under § 1983, liability imputed to supervisory officials must be supported by evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular

constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted). Here, Pevie has failed to submit facts that would establish that the Warden had actual knowledge of the dangerous condition. Neither the Complaint, the ARP, nor the ALJ decision describes any personal involvement by the Warden that would suggest that he was aware of the live electrical wiring before Pevie's injury. In his Opposition, for the first time, Pevie asserts that the Warden walked through the area during weekly inspections and claims that the Warden was overheard asking officers who were with him "why wasn't the socket fixed" and ordering them "to fix it immediately." Mem. Opp'n at 3. This unattributed assertion, offered in a brief rather than an affidavit or declaration, and not referenced in any exhibit, is not properly considered on a motion for summary judgment. *See Bouchat*, 346 F.3d at 522.

Even if the claim could be construed as a sworn statement by Pevie, he has not attested to personal knowledge of the conversation and has not identified the source of the information. The written statement of inmate Fuller, which states only that Fuller reported the broken socket to correctional officers, does not describe a similar conversation and does not claim that the Warden was personally informed of, or had observed, the live electrical wiring. Matters asserted in an affidavit or declaration that, if offered as evidence at trial, are inadmissible as hearsay or otherwise improper may not be considered by the Court when determining what facts are undisputed. *See Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with a motion for summary judgment). Thus, the Court cannot fairly consider Pevie's assertion regarding the Warden's actual knowledge.

Finally, even if the Court could consider Pevie's claim that the Warden saw the live electrical wiring, in Pevie's account, the Warden immediately ordered DOC staff to fix the hazard.

Although it is unclear which correctional officer would have had responsibility for fixing the electrical socket, the Warden's alleged order would refute, rather than support, the claim that he acted with deliberate indifference to a known hazard. As stated in his declaration, the Warden generally expects JCI staff to comply with directives and policies relating to inmate housing and facility conditions, and a direct order to fix a hazard exhibits a lack of indifference to the safety risk and a reasonable response for the Warden to take upon learning of a known safety hazard. *See Farmer*, 511 U.S. at 844 (holding that prison officials who actually know of a substantial risk to prisoner health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted). Thus, Pevie's unsworn and unattributed assertion about the Warden's knowledge of the hazard, even if properly considered, does not demonstrate the "sufficiently culpable state of mind" necessary to establish an Eighth Amendment violation for failure to protect an inmate from a known safety risk. *See Farmer*, 511 U.S. at 834. Because Pevie has not offered sufficient facts upon which a reasonable jury could find in his favor, the Court will grant the Warden's Motion as to the Eighth Amendment claim.

## IV. Due Process

Pevie does not explain how his due process rights were violated. To the extent that prison personnel somehow failed to follow their own policies or procedures with regard to investigating his grievance, such a failure, standing alone, does not amount to a constitutional violation. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." (internal citation omitted)); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."). Here, the ALJ decision, attached to the

Complaint, establishes that the prison grievance system actually resulted in a finding of negligence by the DOC and an award of damages to Pevie. Based on this record, Pevie has failed to establish a due process violation.

V.      **Unserved Defendants**

Defendants Snyder and Gang have not been served with the Complaint. Because Pevie is an inmate who is proceeding *in forma pauperis*, the Court will review the allegations against these unserved Defendants to assess whether Pevie has stated a plausible claim for relief against them. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b) (2012). For the reasons discussed above relating to the Warden, the claims against Snyder and Gang in their official capacity are barred by Eleventh Amendment immunity and therefore must be dismissed.

As for individual capacity claims, although Pevie has identified Snyder as a maintenance manager and Gang as the Chief of Security at JCI, he has provided no specific allegations against them in the Complaint or in the exhibits attached to the Complaint. Liability under § 1983 generally attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Tellingly, neither Snyder nor Gang is referenced in the ARP describing the incident or in the ALJ decision awarding Pevie damages for negligence by the DOC, both attached the Complaint. Pevie likewise has failed to allege facts to support a claim of supervisory liability under the relevant standard. *See supra* part III. Because Pevie has failed to state a plausible claim for relief against Snyder, the claim against him will be dismissed without prejudice. *See* 28 U.S.C. § 1915A(b).

In his Opposition, Pevie asserts for the first time that Gang regularly visited the relevant housing unit and that two or three weeks before the incident, Gang was present in front of the electrical socket when the Warden directed officers to fix the socket immediately. Pevie does not

11

state that he observed this visit and conversation, and it is not referenced in his ARP, the statement by inmate Fisher, or the ALJ decision, which included no findings that any individual was personally responsible for the DOC's negligent failure to repair the electrical socket. Where this allegation was not made in the Complaint, and is not based on Pevie's personal knowledge, it cannot be considered for purposes of assessing whether Pevie has stated a claim against Gang. *See supra* Part III. Even if it could be considered, Pevie offers no facts to support the conclusion that Gang, as Chief of Security, had any responsibility for repairing electrical outlets at JCI. Under these circumstances, the Court concludes that Pevie has not stated a plausible claim for relief against Gang. The claims against Gang will therefore be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Warden's Motion to Dismiss or, in the Alternative, for Summary Judgment will be granted, and the claims against Defendants Snyder and Gang will be dismissed without prejudice. A separate Order shall issue.

Date: January 3, 2019

THEODORE D. CHUANG
United States District Judge