UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

TERRANCE PEVIE,

   Plaintiff,

   v.

KEITH LYONS,
SCOTT D. SNYDER and
ALLEN GANG,

   Defendants.

Civil Action No.: TDC-17-1796

**MEMORANDUM OPINION**

Plaintiff Terrance Pevie, a prisoner incarcerated at the Dorsey Run Correctional Facility in Jessup, Maryland, has filed a self-represented Amended Complaint alleging a claim under 42 U.S.C. § 1983 that Defendants violated his rights under the Eighth Amendment to the United States Constitution by failing to prevent an electric shock that he sustained on November 14, 2015 from an open electrical outlet at the Jessup Correctional Institution ("JCI") in Jessup, Maryland. He also asserts a claim of negligence arising from the same incident. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Pevie filed his original Complaint against JCI Warden Keith Lyons, JCI Maintenance Manager Scott D. Snyder, and JCI Chief of Security Allen Gang, in their individual and official

capacities, for violating his Eighth Amendment rights by failing to protect him from an uncovered electrical outlet with exposed wires in a housing unit that caused injuries to his neck, head, and leg. On January 3, 2019, the Court granted Warden Lyons's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("the First Motion") and dismissed without prejudice the claims against Defendants Snyder and Gang ("Defendants"), who had not yet been served. The Court's memorandum opinion on that motion is incorporated by reference into this opinion, and the Court will not restate the facts and legal analysis contained in that opinion. *Pevie v. Lyons*, No. TDC-17-1796, 2019 WL 110955 (D. Md. Jan. 4, 2019). After Pevie appealed the Court's ruling, on May 21, 2019 the United States Court of Appeals for the Fourth Circuit dismissed the appeal because there was no final judgment as to Snyder and Gang and remanded with instructions to permit Pevie to file an amended complaint. *Pevie v. Lyons*, 770 F. App'x 152, 153 (4th Cir. 2019). On August 13, 2019, the Court granted Pevie leave to file an amended complaint against Snyder and Gang only.

On September 19, 2019, Pevie filed a "Response to Order" which the Court construes as his Amended Complaint. ECF No. 41. Because Pevie is self-represented, the Court will liberally construe the operative Amended Complaint to consist of both the Response to Order and the relevant allegations in the original Complaint. Where both the Fourth Circuit and this Court have stated that the case against Warden Lyons has been resolved in his favor, the Court will not consider or address the allegations against Warden Lyons.

In the Amended Complaint, Pevie asserts that on November 14, 2015 at approximately 10:30 a.m., he was out of his cell for recreation inside "the bottom dayroom on C-tier of B-building" at JCI when he accidentally backed into an uncovered electrical socket and was electrocuted. Compl. ¶ 8, ECF No. 1. The socket had exposed, live electrical wires hanging out

of it.  Pevie was rendered unconscious, fell and injured his head and neck, and required emergency medical treatment for leg blisters and burns.  Several months before this incident, Eric Fuller, another inmate, had seen the exposed electrical wiring spark and flash, and he reported the hazard to multiple correctional officers, but no action was taken to address the issue.  On January 3, 2017, Administrative Law Judge Michelle W. Cole ("the ALJ") concluded that the Maryland Division of Correction "was negligent when it failed to repair the exposed electrical outlet in the recreation room" and awarded Pevie $1,100 in compensation for his pain and suffering.  ALJ Op. at 9-10, ECF No. 1-3.  The ALJ's proposed findings and award were affirmed by Stephen T. Moyer, Secretary of the Maryland Department of Public Safety and Correctional Services, on February 2, 2017.

Pevie further asserts that "the Warden along with Allen Gang had personal knowledge when they witnessed the damaged outlet socket but failed to have it repaired before I got hurt." Am. Compl. at 2, ECF No. 41.  He also alleges that "[w]hat links the Warden, Chief of Security, and Maintenance Manager to this violation is that they had personal knowledge of the exposed wires before I got hurt, but neglected to have it fixed, or off limits to avoid injury." *Id.* at 3. Finally, Pevie asserts that all three officials "have authority to have the electrical outlet fixed." *Id.*

## DISCUSSION

In their Motion, Defendants argue that (1) the Amended Complaint does not allege sufficient facts to support a plausible claim for relief; (2) upon consideration of summary judgment, there is no genuine issue of material fact that would prevent entry of judgment in their favor; (3) they are entitled to qualified immunity; and (4) if the federal constitutional claim fails the Court should decline to exercise supplemental jurisdiction over the negligence claim.  Because

Defendants merely recite the standard for qualified immunity but provide no substantive analysis on that argument, the Court finds that they have not shown that dismissal on that basis is warranted.

Although Defendants also assert Eleventh Amendment immunity from claims against them in their official capacity and argue that they cannot be held vicariously liable for constitutional claims under § 1983, the Court addressed those issues as to the Warden in resolving the First Motion and need not address them again. For the same reasons stated in the memorandum opinion on the First Motion, any claims against Defendants in their official capacities will be dismissed based on Eleventh Amendment immunity, and vicarious liability will not provide a basis to support the Eighth Amendment claims against Defendants. *Pevie,* 2019 WL 110955 at *3-4. The Court will address the remaining arguments below.

## I. Legal Standard

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Defendants have attached evidence outside the pleadings for the Court's consideration. The Court may consider such exhibits only if it converts the Motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). Before converting a motion to dismiss into one for summary

judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Pevie has submitted a document entitled "Affidavit of Facts Writ of Discovery," ECF No. 46-3, which the Court construes as a Rule 56(d) affidavit, in which he seeks discovery of prior statements by parties and witnesses, records relating to the incident in question, medical reports relating to his injuries, and other materials. Where Pevie effectively seeks discovery in advance of a ruling on summary judgment, and his case turns on a factual dispute about the knowledge and actions of Defendants relating to the failure to repair the electrical outlet, the Court finds that he has adequately demonstrated that summary judgment should not be granted before discovery. The Court will therefore construe the Motion as a Motion to Dismiss only.

## II.     Eighth Amendment

Because Pevie is an inmate complaining of an injury occurring in a prison, his § 1983 claim arises under the Eighth Amendment to the Constitution. "The Eighth Amendment's prohibition on 'cruel and unusual punishments' imposes certain basic duties on prison officials, including

taking "reasonable measures to guarantee the safety of the inmates." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). Pevie's Eighth Amendment claim is most fairly construed as a claim that Defendants failed to protect him from a known safety risk, specifically the live electrical wiring. To establish an Eighth Amendment claim based on a failure to protect inmate health and safety, an inmate must show an objectively "serious deprivation" of rights "in the form of a serious or significant physical or emotional injury," *Danser v. Stansberry,* 772 F.3d 340, 346-47 (4th Cir. 2014), or "a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions," *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). In determining whether this objective component has been satisfied, the Court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

A plaintiff must also establish that the prison officials involved subjectively had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official must have actual knowledge of an excessive risk to the prisoner's safety but nevertheless disregard it. *Id.* at 837. A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128. "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow,* 301 F.3d 605, 607 (7th Cir. 2002)).

Here, Pevie has plainly alleged sufficiently that the live electrical wiring constituted an objectively serious risk to inmate health and safety and that he suffered a significant physical injury

from it.  He has also alleged, through the statement by Fuller referenced in the Complaint, that prison officials were warned of the presence of the live electrical outlet several months before the incident but took no action.  Because vicarious liability is unavailable for § 1983 claims, *Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004), the question is whether Pevie has alleged sufficient facts to support a finding that Snyder and Gang were personally aware of the danger but failed to act.  In the Amended Complaint, Pevie now specifically alleges that Gang "had personal knowledge" of the hazardous electrical outlet because he "witnessed the damaged outlet socket but failed to have it repaired before I got hurt."  Am. Compl. at 2.  Although he does not identify Snyder by name, he also alleges that "[w]hat links the Warden, Chief of Security, and Maintenance Manager to this violation is that they had personal knowledge of the exposed wires before I got hurt, but neglected to have it fixed, or off limits to avoid injury," even though they had the "authority to have the electrical outlet fixed."  *Id.* at 3.  It is undisputed that Gang was the Chief of Security and Snyder was the Maintenance Manager.

Viewing the allegations in the light most favorable to Pevie, as the Court must at this stage, Pevie has plausibly alleged a claim of deliberate indifference to inmate health and safety in violation of the Eighth Amendment.  Although Pevie does not provide significant detail about how Defendants had personal knowledge other than a statement that Gang "witnessed" the hazard, *id.* at 2, this claim is plausible in light of Fuller's statement that he warned multiple correctional officers about the danger several months before Pevie was injured, and the fact that the ALJ actually found negligence.  Where the danger posed by the electrical wiring could reasonably be construed as "obvious," the failure to have it repaired, or even to block it off or post warning signs, could plausibly constitute deliberate indifference.  *Raynor*, 817 F.3d at 128.  Such a finding could be based either on direct responsibility to take action or a failure, once aware of the hazard, to

ensure that subordinates actually addressed the danger. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (permitting a finding of supervisory liability on a § 1983 claim if the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff, but the supervisor's response was so inadequate as to show deliberate indifference, and there was an affirmative causal link between the supervisor's inaction and the plaintiff's injury).

To the extent that Defendants argue that Pevie has not offered more details about the specific circumstances leading Defendants to be aware of the danger and the specific responsibilities Defendants may have had for addressing the hazard, those and other specific facts are unlikely to be available to Pevie at this stage and, in fact, are among the matters on which he seeks discovery. Accordingly, the Court finds that the Amended Complaint sufficiently states a cause of action and will deny the Motion.

The Court notes that even if, in the alternative, it had considered the submitted evidence as part of a motion for summary judgment, the Motion would still be denied. Although the record includes declarations from both Defendants denying knowledge of the electrical hazard, Pevie also submitted a declaration, under penalty of perjury, stating that "both defendants had first hand knowledge of the damaged outlet socket" because "2 or 3 weeks before 11-14-15 I witnessed both defendants along with their whole administrative team enter on C-tier of B-building" and "I heard defendant Lyons giving orders to fix the damaged socket while defendant Gang stood by listening." Pevie Decl. at 1, ECF No. 46-2. He further stated that "[b]oth defendants have to make their weekly tier rounds, but never followed up with making sure the damaged socket got repaired until after I got hurt." *Id.* at 2. At a minimum, therefore, there is a genuine issue of material fact on the present record on whether Defendants had actual knowledge of the electrical hazard.

Finally, where Defendants' argument for dismissal of the negligence claim depends entirely on dismissal of the federal constitutional claims, the Court will the deny the Motion as to that claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to any claims against Defendants Snyder and Gang in their official capacities, which will be dismissed. The Motion will be otherwise denied. Based on prior rulings of the Court, Warden Keith Lyons shall be dismissed as a Defendant. A separate Order shall issue.

Date: August 18, 2020            /s/ *Theodore D. Chuang*
                                           THEODORE D. CHUANG
                                           United States District Judge